**UNITED STATES of America,
Appellant,**

v.

**John David BARTLETT, Appellee.**

No. 85–5114.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1985.

Decided June 20, 1986.

Rehearing and Rehearing En Banc
Denied Aug. 5, 1986.

Robert J. Erickson, Dept. of Justice, Washington, D.C., for appellant.

Robert C. Riter, Jr., Pierre, S.D., for appellee.

Before HEANEY, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The United States appeals from the dismissal of an indictment returned against John David Bartlett charging him with assault with intent to commit rape in Indian country, under 18 U.S.C. §§ 113(a), 1153 (1982). The district court dismissed the indictment on the basis of unreasonable pre-indictment delay, finding the nearly five-year delay between the date of the offense and the date of the indictment violated the due process clause. The federal indictment was returned shortly after the Supreme Court affirmed a lower court deci-

sion setting aside Bartlett's state court conviction on charges arising out of the same incident on the ground that the federal government had exclusive criminal jurisdiction over the offense. *See Solem v. Bartlett,* 465 U.S. 463, 104 S.Ct. 1161, 79 L.Ed.2d 443 (1984), *aff'g* 691 F.2d 420 (8th Cir.1982), *aff'g* No. 82–3009 (D.S.D. Apr. 19, 1982). The government contends that it was reasonable to delay seeking an indictment until the Supreme Court had definitively resolved the question of which sovereign—the federal government or the State of South Dakota—had jurisdiction over the crime, and that Bartlett has not demonstrated any actual prejudice to his right to a fair trial by reason of the delay. Because we hold that Bartlett has not demonstrated substantial actual prejudice to his right to a fair trial, we reverse the judgment of the district court.

Bartlett, an Indian, allegedly assaulted Henrietta Janis on March 14, 1979 at the Eagle Butte Legal Services Office on the Cheyenne River Sioux Reservation in South Dakota. He was arrested and charged under state law with attempted rape. On April 24, 1979, Bartlett pleaded guilty in state court and was sentenced to ten years imprisonment. He immediately commenced serving his term in the state penitentiary.

Eagle Butte is located on a portion of the Reservation which had been opened for settlement by Congress in 1908. *See* Act of May 29, 1908, Pub.L. No. 60–158, 35 Stat. 460. At the time of the incident both the Federal District Court for the District of South Dakota and the South Dakota Supreme Court had held that areas of the Reservation opened to homesteading had lost their reservation status, and offenses occurring within those areas were therefore within exclusive state criminal jurisdiction. *See United States v. Juvenile,* 453 F.Supp. 1171 (D.S.D.1978), *rev'd, United States v. Dupris,* 612 F.2d 319 (8th Cir. 1979); *Stankey v. Waddell,* 256 N.W.2d 117 (S.D.1977). Later that year, however, this court reversed the *Juvenile* decision in *United States v. Dupris,* 612 F.2d 319 (8th Cir.1979), *vacated and remanded on other grounds,* 446 U.S. 980, 100 S.Ct. 2959, 64 L.Ed.2d 836 (1980), and held that the federal government retained sole jurisdiction to try offenses committed by Indians on the Cheyenne River Sioux Reservation.

After exhausting his state court remedies, Bartlett filed a petition for a writ of habeas corpus in the federal district court. The sole contention raised in his petition for habeas relief was that the state lacked jurisdiction to try him because the federal government had exclusive jurisdiction over offenses occurring on the Reservation. The district court granted the writ in April, 1982, *Bartlett v. Solem,* No. 82–3009 (D.S.D. Apr. 19, 1982); we affirmed, *Bartlett v. Solem,* 691 F.2d 420 (8th Cir.1982), and our decision ultimately was affirmed by the Supreme Court on February 22, 1984, *Solem v. Bartlett,* 465 U.S. 463, 104 S.Ct. 1161, 79 L.Ed.2d 443 (1984).

On March 7, 1984, one week before the statute of limitations would have run, the government filed the present indictment against Bartlett in federal court. The indictment charged him with assault with intent to commit rape[1] in connection with the incident at Eagle Butte, for which Bartlett had already been incarcerated for nearly five years.[2] The district court granted

---

1. 18 U.S.C. §§ 113(a), 1153. The relevant portions of 18 U.S.C. § 1153 provide:

Any Indian who commits against the person * * * of another Indian or other person any of the following offenses, namely, * * * assault with intent to commit rape * * * within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States. 18 U.S.C. § 113(a) provides:

Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

(a) Assault with intent to commit murder or rape, by imprisonment for not more than twenty years.

2. Bartlett was arrested soon after the alleged rape. He remained in the South Dakota prison system until July 31, 1984, when the district court issued a writ of habeas corpus *ad prose-*

Bartlett's motion to dismiss the indictment for pre-indictment delay, and ordered him released from custody. The district court held that the government's decision to delay bringing an indictment until Bartlett's habeas action had been definitively decided on appeal was not reasonable in light of the government's consistent assertion of jurisdiction over crimes on the Reservation after our decision in *Dupris* in 1979 and during the time Bartlett's habeas action was pending. The district court held that to the extent the government decided to await the outcome of Bartlett's habeas action against the state before seeking a new indictment, "the delay [became] an intentional device to gain tactical advantage over the accused." *United States v. Bartlett*, No. CR 84–30018–01, slip op. at 6 (D.S.D. Mar. 15, 1985) (quoting *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971)). The district court found actual prejudice to Bartlett in his continued incarceration on void state charges, and in the death and disappearance of several witnesses who might have provided exculpatory evidence. *Id.* at 7–8.

The government argues on appeal that the district court misapplied the standards of *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), and *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), in granting Bartlett's motion.

Statutes of limitation provide the primary guarantee against prosecution of a defendant on overly stale charges. *United States v. Lovasco*, 431 U.S. at 789, 97 S.Ct. at 2048; *United States v. Marion*, 404 U.S. at 322, 92 S.Ct. at 464. Legislatures define in these statutes the appropriate balance between the governmental interest in just and effective prosecution and the defendant's interest in being protected from having to defend against charges based on events long since obscured by the passage of time. *See Marion*, 404 U.S. at 322–23,

92 S.Ct. at 464; *United States v. Otto*, 742 F.2d 104, 107 (3d Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 978, 83 L.Ed.2d 980 (1985). The Supreme Court has acknowledged, however, that the due process clause has a "limited role to play in protecting against oppressive delay." *Lovasco*, 431 U.S. at 789, 97 S.Ct. at 1048. Pre-indictment delay will be sufficiently "oppressive" to warrant dismissal of an indictment where the delay was unreasonable and substantially prejudicial to the defendant in the presentation of his case. *Id.* at 790, 97 S.Ct. at 2048; *Marion*, 404 U.S. at 324, 92 S.Ct. at 465. Proof of actual prejudice resulting from the delay is "generally a necessary but not sufficient condition to establish a due process violation." *Lovasco*, 431 U.S. at 790, 97 S.Ct. at 2048. Proof of actual prejudice ensures that the due process claim is "concrete and ripe for adjudication," *id.* at 789, 97 S.Ct. at 2048. Where actual prejudice is established, the court must balance the reasons for the delay against the resulting prejudice. *Id.* at 796, 97 S.Ct. at 2052; *United States v. Purham*, 725 F.2d 450, 453 (8th Cir.1984); *United States v. Barket*, 530 F.2d 189, 193 (8th Cir.1976).

■ The defendant bears the burden of proving actual prejudice flowing from the pre-indictment delay. *Lovasco*, 431 U.S. at 789–90, 97 S.Ct. at 2048; *United States v. Tempesta*, 587 F.2d 931, 933 (8th Cir.1978), *cert. denied*, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979). To prove actual prejudice, a defendant must specifically identify witnesses or documents lost during delay properly attributable to the government. *See Lovasco*, 431 U.S. at 788–90, 97 S.Ct. at 2047–48; *United States v. Dennis*, 625 F.2d 782, 794 (8th Cir.1980); *see also United States v. Mills*, 641 F.2d 785, 788 (9th Cir.), *cert. denied*, 454 U.S. 902, 102 S.Ct. 409, 70 L.Ed.2d 221 (1981); *United States v. Tousant*, 619 F.2d 810, 814 (9th Cir.1980). Speculative or conclusory claims alleging "possible" prejudice

---

*quendum* to the Warden of the state penitentiary commanding him to move Bartlett to a county jail near the federal courthouse for his ap-

pearance in federal court. Bartlett remained in the county jail until April 5, 1985, when the district court ordered his release.

as a result of the passage of time are insufficient. *Marion*, 404 U.S. at 325–26, 92 S.Ct. at 466; *Purham*, 725 F.2d at 453. The defendant also must relate the substance of the testimony which would be offered by the missing witnesses or the information contained in lost documents in sufficient detail to permit a court to assess accurately whether the information is material to the accused's defense. *See United States v. Page*, 544 F.2d 982, 985 (8th Cir. 1976); *United States v. Quinn*, 540 F.2d 357, 361–62 (8th Cir.1976); *see also Mills*, 641 F.2d at 789; *United States v. Mays*, 549 F.2d 670, 679–80 (9th Cir.1977). Finally, the defendant must show that the missing testimony or information is not available through substitute sources. *See Tempesta*, 587 F.2d at 933–34; *see also United States v. Cederquist*, 641 F.2d 1347, 1352–53 (9th Cir.1981). In sum, the defendant must demonstrate that the prejudice *actually* impaired his ability to meaningfully present a defense. *United States v. Solomon*, 686 F.2d 863, 872 (11th Cir. 1982); *Cederquist*, 641 F.2d at 1351.

The district court held that the defendant had satisfactorily demonstrated prejudice in two ways: first, by being forced "to sit imprisoned for five years on charges the United States always considered void," *United States v. Bartlett*, slip op. at 6; and second, by the death or disappearance of a number of witnesses. *Id.* at 7–8.

■ We do not believe that Bartlett's incarceration as a result of his guilty plea to the state charges, by itself, is actual prejudice for the purpose of the due pro-cess clause. The Supreme Court's concern in *Marion* and *Lovasco* was with due process rights to a fair trial and prejudice to the defense of the case. *Lovasco*, 431 U.S. at 789–90, 97 S.Ct. at 2048; *Marion*, 404 U.S. at 324, 92 S.Ct. at 465. Bartlett does not specifically indicate how his incarceration, *per se*, actually impaired his ability to mount an effective defense. *Cf. Purham*, 725 F.2d at 453 (no actual prejudice to defendant's ability to defend against federal charges where defendant incarcerated on parallel state charges, later dismissed, before federal indictment filed). Furthermore, prejudice which consists only of the mere passage of time while incarcerated and the loss of or impairment of memories does not constitute actual prejudice for purposes of the due process clause. *See Marion*, 404 U.S. at 322, 92 S.Ct. at 464; *Purham*, 725 F.2d at 453; *United States v. Taylor*, 603 F.2d 732, 785 (8th Cir.), *cert. denied*, 444 U.S. 982, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979).[3]

■ Bartlett specifically identified three witnesses, now dead, whom he claims would have provided material, exculpatory information:[4] Emanuel Red Bear, the first tribal police officer on the scene; Frank Hawk Eagle, who allegedly had been falsely accused by the victim of rape in 1979, the same year the present incident occurred; and John Miner, the defendant's roommate. We believe Bartlett has failed to demonstrate that he has suffered actual prejudice as a result of the loss of Officer Red Bear and Miner. Bartlett offered only

---

**3.** We doubt, moreover, that any prejudice to the defendant which resulted from the sole fact of incarceration in state prison is properly attributable to the federal government. At the time the defendant was incarcerated there was no jurisdictional controversy. *See United States v. Juvenile*, 453 F.Supp. 1171 (D.S.D.1978), *rev'd, United States v. Dupris*, 612 F.2d 319 (8th Cir.1979); *Stankey v. Waddell*, 256 N.W.2d 117 (S.D.1977). Even if the federal government had filed the indictment earlier, the defendant, to free himself, would have had to proceed against the state authorities, who contested our decision in *Dupris*. *See Bartlett v. Solem*, No. 82–3009 (D.S.D. Apr. 19, 1982), *aff'd*, 691 F.2d 420 (8th Cir.1982), *aff'd*, 465 U.S. 463, 104 S.Ct. 1161, 79 L.Ed.2d 443 (1984); *State v. Janis*, 317 N.W.2d 133 (S.D.

1982). The federal government, generally, cannot be held liable for prejudice which flows solely from the actions of a separate sovereign. *Cf. Purham*, 725 F.2d at 453 n. 2 (where both federal and state jurisdiction proper, federal government arguably only responsible for two-month delay between dismissal of state charges and filing of federal indictment).

**4.** The defendant also identified as missing the physician who treated the victim on her arrival at the hospital after the attempted rape. The physician's whereabouts were subsequently discovered. We need not consider, therefore, any prejudice which might result from his absence.

vague and speculative allegations as to what these witnesses would have said had they testified. He contends that Officer Red Bear's observations at the scene and investigation "would have been important," but does not indicate what, if anything, Red Bear observed or discovered that might have aided his defense. Moreover, Bartlett has not shown that Officer Red Bear's testimony would not be cumulative of the testimony of a legal services attorney, Cindy Howard, who was the first person on the scene after the attempted rape, and who accompanied Officer Red Bear and the victim to the hospital. *See Tempesta,* 578 F.2d at 933–34. *Cf. United States v. Pino,* 708 F.2d 523, 528 (10th Cir.1983) (no showing testimony of missing physician would be different from that of physician who did testify); *Solomon,* 686 F.2d at 872 (no actual prejudice to defendant from loss of documents in fire where he testified to contents, and existence of records not supported by any testimony); *Cederquist,* 641 F.2d at 1352–53 (no actual prejudice to defendant where substitute records available for lost documents, even if lost documents were best evidence to prove contention). Bartlett's allegations merely suggest that if the witness were alive today, it is possible he could provide materially exculpatory information.[5] Alle-

gations of this speculative nature clearly fail to demonstrate actual prejudice. *See Marion,* 404 U.S. at 325–26, 92 S.Ct. at 465–66.

■ The defendant also contends that Miner would have offered information regarding the defendant's prior relationship with the victim, which might have had some bearing on the issue of consent. However, the defendant offers no indication of what that information might be,[6] or why that information would not be available from the victim on cross-examination or from the defendant himself, if he chose to testify. *Cf. Solomon,* 646 F.2d at 872. The defendant's allegations of prejudice resulting from Miner's death are, like those concerning Officer Red Bear, too speculative to demonstrate actual prejudice.

■ We therefore conclude that these "findings" of the district court of prejudice rest on an erroneous view of the law, because they are based on speculative, vague, and insubstantial allegations, and are thus insufficient to meet the standards required by *Marion* and *Lovasco. Cf. Pullman-Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982) (Rule 52 does not apply to district court findings which rest on an erroneous view of the law).[7]

---

5. The district court found, "[T]he court cannot find that the testimony of * * * the first policeman to see the victim, *might not have* disclosed important information about the victim's condition and whether an assault had actually taken place. The court has no way of knowing what these witnesses would say * * *." *United States v. Bartlett,* slip op. at 8 (emphasis added).

6. The district court specifically found that, "The Court cannot know whether Minor, Defendant's roommate, could have established past sexual behavior between the accused and the victim, going to the 'issue of whether the alleged victim consented to the sexual behavior with respect to which the rape or assault is alleged' * * *." *United States v. Bartlett,* slip op. at 7–8 (quoting Fed.R.Evid. 412(b)(2)(B)).

7. Our holding is not a determination that these "findings" of the district court are clearly erroneous but rather a determination that they are based on an erroneous view of the law. As the dissent points out, a district court's findings of

actual prejudice are governed by the clearly erroneous standard. *See United States v. Crow Dog,* 532 F.2d 1182, 1194 (8th Cir.1976); *Quinn,* 540 F.2d at 361; *accord Otto,* 742 F.2d at 107; *Pino,* 708 F.2d at 527–28. *But see United States v. Moran,* 759 F.2d 777, 782 (9th Cir.1985) (clearly erroneous review of prejudice findings called into question by recent circuit precedent); *Stoner v. Graddick,* 751 F.2d 1535, 1543 n. 8 (11th Cir.1985) (finding of prejudice is mixed question of law and fact). The Supreme Court made clear in *Marion,* however, that speculative and premature allegations of possible prejudice are not in themselves enough to constitute "actual prejudice" for purposes of the due process clause. 404 U.S. at 325–26, 92 S.Ct. at 466; *see Carlson,* 697 F.2d 231, 236 (8th Cir.1983); *Tempesta,* 587 F.2d at 933–34. To the extent that the district court found the defendant's speculative allegations involving the loss of Officer Red Bear and Miner constituted actual prejudice, it erred as a matter of law for this is insufficient to support a finding of actual prejudice.

■ Bartlett's allegations concerning the possible testimony of Frank Hawk Eagle, now deceased, are far more significant. Bartlett specifically alleged that Hawk Eagle would testify that he, Hawk Eagle, had a consensual sexual relationship with the victim earlier in 1979 and thereafter had been accused of rape by the victim.[8] Testimony at the hearing on Bartlett's motion to dismiss supported this claim. This information goes to the issue of the victim's credibility, a particularly significant issue in a rape case, and the defense of consent.[9]

■ *Marion*, however, requires that the prejudice to accused's defense be "substantial." 404 U.S. at 324, 92 S.Ct. at 465. *See also Stoner v. Graddick*, 751 F.2d 1535, 1541 (11th Cir.1985); *United States v. Brown*, 742 F.2d 359, 362 (7th Cir.1984); *Quinn*, 540 F.2d at 362. Although the district court correctly concluded that this testimony could be helpful, it failed to consider whether its absence constituted "substantial" prejudice in light of the available evidence. Clearly, not all lost testimony, even if specifically proved, significantly impairs a defendant's ability to defend himself. *See United States v. Jackson*, 504 F.2d 337, 341 (8th Cir.1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975); *see also Pino*, 708 F.2d at 528; *Solomon*, 686 F.2d at 872; *Cf. United States v. Barket*, 530 F.2d at 194 (weakness of government's case factor to be considered in balancing prejudice with delay). The question in each case is whether the missing evidence is such "as to impair the fairness of the trial." *Solomon*, 686 F.2d at 871.

■ Assessing the missing testimony of Hawk Eagle with the other available evidence, we are forced to conclude that Bartlett has not demonstrated substantial prejudice. Two witnesses, Investigator White and Sheriff Schweitzer, testified in the hearing before the district court that Bartlett, after being given appropriate *Miranda* warnings, had confessed to the attempted rape of Janis, including striking her twice with his fist. As our earlier decisions in *Jackson* and *Barket* require that we consider the strength of the government's case, we can only conclude that the confession would be the centerpiece of an extremely strong case against Bartlett. Additionally, the lost testimony of Hawk Eagle would not strongly support an attempt by Bartlett to raise the defense of consent. Hawk Eagle apparently would have testified that he and a friend were out in a parked car with the victim; that the victim had consensual intercourse with the friend; and that Hawk Eagle thereafter engaged in intercourse with the victim. These circumstances are quite dissimilar to those in the present case. Bartlett was alone, and came to the victim's place of business during business hours. Furthermore, the victim sustained a number of blows to the face during the incident, and was found with her clothes off. *Cf.*

8. Although the district court did not explicitly find that testimony of the victim's prior false accusation of rape would be admissible under rule 412(b)(1), it is necessarily subsumed in the court's conclusion that Bartlett was prejudiced by the loss of this testimony. *See United States v. Bartlett*, slip op. at 7. *Cf. Hughes v. Raines*, 641 F.2d 790, 792–93 (9th Cir.1981); (where relevant, accused should be permitted to show complainant made false accusations of rape in the past); *People v. Hackett*, 421 Mich. 338, 348–49, 365 N.W.2d 120, 125 (1984); *State v. Caswell*, 320 N.W.2d 417, 419 (Minn.1982) (same); *People v. Mandel*, 48 N.Y.2d 952, 953, 401 N.E.2d 185, 187, 425 N.Y.S.2d 63, 64 (1979) (same), *cert. denied*, 446 U.S. 949, 100 S.Ct. 2913, 64 L.Ed.2d 805 (1980); *see generally* 23 C. Wright & K. Graham, *Federal Practice & Procedure* § 5387, at 579–80 (1980 Supp. & 1985) (constitutional right to fair trial requires defendant be permitted to introduce evidence that victim made similar accusations of rape against others proved false); *id.* § 5384, at 546–47.

9. The government argues that the defendant's pretrial motion for the admission of evidence relating to the victim's prior sexual conduct under rule 412(b)(2)(B) and his proposed jury instructions did not raise the issue of consent. The district court made a preliminary ruling denying the defendant's pretrial motion. However, the district court clearly indicated that evidence bearing on the issue of consent would be admissible. Tr. at 21. Moreover, the district court obviously believed that the defendant could have raised consent at trial, and indeed sought to, when it found actual prejudice in the loss of Miner's testimony. *See supra* note 6.

*Hughes v. Raines,* 641 F.2d 790, 793 (9th Cir.1981).

The lost testimony of Hawk Eagle, therefore, is only of limited probative value when considered against the evidence in the record. We conclude that it is insufficient to meet the requirement of actual substantial prejudice mandated by *Marion* and *Lovasco.*

█ Our holding that Bartlett has not carried his burden of proving that he suffered substantial actual prejudice makes it unnecessary for us to determine whether the government delay was "an intentional device to gain tactical advantage over the accused," *Marion,* 404 U.S. at 324, 92 S.Ct. at 465, or similarly condemnable, deliberate advantage-seeking conduct.[10] *United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 2300, 81 L.Ed.2d 146 (1984). However, we believe it is appropriate, given the circumstances of this case, to comment briefly on the government's asserted justification for the delay.

█ The government contends that the only reason for the five-year delay was that from the time both state and federal courts held that the state had exclusive authority until the Supreme Court's decision in *Solem v. Bartlett* last term, there was "substantial uncertainty as to the proper jurisdiction over the crime." Brief of the United States at 11. As an initial matter, this position is necessarily premised on the proposition that until such time as the Supreme Court has passed on a question, the federal government may, but is not required, to abide by lower federal court decisions on the matter. The jurisdictional question may not have been "authoritatively" settled until *Solem v. Bartlett* was decided by the Court, but until that time, our decision in *Dupris* (and *Bartlett* on appeal) was binding precedent in the circuit, which the federal government was obliged to honor and follow.[11]

█ Moreover, the government's position is undercut by the district court's findings that the government continued to indict and prosecute individuals in federal court after our decision in *Dupris* and during the time Bartlett's habeas petition was being litigated.[12] The government's continued assertion of jurisdiction over criminal cases on the Reservation after *Dupris* is inconsistent with its claim that it was necessary to delay the indictment of Bartlett until the jurisdictional issue had been settled by the Supreme Court.[13] We thus have difficulty finding in the government's

---

**10.** The Court noted in *Lovasco* the government's concession that "prosecutorial delay incurred in reckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense," would constitute a violation of the due process clause. 431 U.S. at 795 n. 17, 97 S.Ct. at 2051 (quoting Brief of United States at 32–33 n. 25, *Lovasco* ). The defendant does not allege that the prosecution was aware of any such "appreciable risk."

**11.** The federal government participated in *Dupris;* in fact, the federal government appealed the district court's decision dismissing the indictment in *Dupris* for lack of federal jurisdiction. 612 F.2d at 320.

**12.** The district court found that the United States had consistently asserted its criminal jurisdiction on the Cheyenne River Indian Reservation throughout the 1970's, and, after *Juvenile* was reversed in November 1979, there was no longer any question but that Bartlett had committed a crime within United States jurisdiction. It observed also that the investigation in this case was made by the Cheyenne tribal police under the supervision of the Federal Bureau of Indian Affairs. It further found that the files of the court reflect numerous criminal indictments for acts on the reservation during the entire pendency of the Bartlett habeas corpus appeal. *United States v. Bartlett,* slip op. at 4–5.

**13.** If the government believed that South Dakota's opposition to Bartlett's habeas motion, given *Dupris,* reintroduced uncertainty into the jurisdictional issue, it could have sought a stay of prosecution in the district court or this court after indicting Bartlett until we had a chance to reexamine the question on appeal. Similarly, after our decision in *Bartlett,* the government could have sought a stay pending the resolution of the state's petition for certiorari to the Supreme Court. We do not believe that the district courts would be insensitive to the legitimate needs of the government in this situation. *See United States v. Bartlett,* slip op. at 6 n. 3 (noting availability of stay).

decision to delay indicting Bartlett an appropriate governmental interest.[14]

■ The case before us is presented on a limited record developed at a pre-trial hearing. Conceivably, when the issues are fully tried, there may be additional evidence presented that Bartlett sustained actual and substantial prejudice as a result of the loss of the witnesses. *Cf. Marion,* 404 U.S. at 326, 92 S.Ct. at 466. The district court is free to reevaluate whether the delay has caused Bartlett such prejudice as to impair the fairness of the trial.

This is a deeply troubling case. As pointed out in *Lovasco* we must be concerned only with the due process clause and not the prosecutor's decision as to whether to seek this indictment. *Lovasco,* 431 U.S. at 790, 97 S.Ct. at 2048. Bartlett has now served seven years as a result of this incident and whether any further sentence would be appropriate must be left to the district court should Bartlett again be convicted. We believe however that we have no alternative but to reverse the dismissal of the indictment.

We reverse and remand for further proceedings.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. The Court today approves a preindictment delay considerably longer (fifty-nine months and three weeks) than that at issue in any other of our previous decisions failing to find prejudice, despite the district court's finding that the delay was designed to gain tactical advantage over Bartlett, and this Court's admission that the government's delay was not motivated by an appropriate governmental interest, and despite the district court's finding of substantial prejudice—a finding which the majority fails to find clearly erroneous as required by well established case law. *United States v. Barket,* 530 F.2d 189, 193 (8th Cir.). This is not a case where the government needed additional time to complete its investigation, *United States v. Lovasco,* 431 U.S. 783, 796, 97 S.Ct. 2044, 2051, 52 L.Ed.2d 752 (1977), or a case where the defendant argues that the government was required to file a charge as soon as probable cause existed, *id.* at 791, 97 S.Ct. at 2049, or at least as soon as the government had sufficient evidence to prove guilt beyond a reasonable doubt. *Id.* Instead, within one year of Bartlett's state conviction, the government was fully aware that the state conviction was void, and it had all the evidence against Bartlett it needed and no reason to delay bringing federal charges against him. As the district judge aptly stated, "[Bartlett] was allowed to sit imprisoned for five years on charges the United States always considered to be void." The government's conduct is outrageous and without justification. And this Court's difficulty in finding an appropriate governmental interest in the government's decision to delay indicting Bartlett reveals that the government's conduct was not in good faith. Now, Bartlett, despite serving six years in prison, after his ten-year sentence for rape, is back to square one and must face charges which, under any fair view of the law, should have been brought long ago.

I am also concerned with what I perceive to be the majority's *de novo* review of the "substantial prejudice" issue. The district court found the five-year delay created substantial prejudice to Bartlett's ability to present a defense because at least three material witnesses are now unavailable and because Bartlett's six years in prison have made it difficult for him to prepare an effective defense. These findings must be

---

**14.** The government cites a number of cases for the proposition that pre-indictment delay to await the outcome of a jurisdictional dispute is not improper conduct. Appellant's Brief at 10–11 (citing *Pino,* 708 F.2d at 528–29; *Solomon,* 686 F.2d at 872; *United States v. Revada,* 574 F.2d 1047, 1050 (10th Cir.1978)). These cases are inapposite, however, for they involved either "good faith" confusion over the appropriate jurisdiction or venue, *see Pino,* 708 F.2d at 528–29; *Solomon,* 686 F.2d at 872, or a deliberate decision to await the outcome of a state prosecution on parallel charges to efficiently allocate prosecutorial resources, *see Revada,* 574 F.2d at 1050. The government's conduct post-*Dupris* and during the pendency of Bartlett's appeal contradicts any similar assertion that they considered the jurisdictional question in dispute.

affirmed unless "clearly erroneous." *Barket*, 530 F.2d at 193. The majority avoids this standard by deciding that the district court's findings are based on an erroneous interpretation of the law. In my view, however, the district court recited and applied the proper legal standard. I would accord greater deference to the district court's finding that the nearly five-year delay and the disappearance of every witness which Bartlett could have presented in his favor materially disadvantaged his defense—all without justifiable excuse for the government's inordinate delay.

In my view, the fact that Bartlett pled guilty to now-void state charges arising out of the same incident is not reason for denying him a fair trial. The standard is not whether Bartlett can prove that, were it not for the five-year delay, he would be acquitted—indeed, we have no right to assume that he will be convicted, regardless of what appears to be substantial evidence against him. Instead, the question is whether his defense has been substantially prejudiced by the unreasonable five-year delay during which apparently all of his favorable witnesses have become unavailable. The district court found that it had and no reason is given as to why this Court should disagree.

There is an additional element of this case that troubles me. It seems apparent that the decision to retry Bartlett is based, in large measure, on the personal pique of state and federal prosecutors. They are unhappy with this Court's decision on the jurisdictional issue and are determined to show us that they will have the last word, even if the defendant's rights are trampled in the process. We should not cooperate in that effort.