**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5948

JOHN BURTON,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-95-88-Y)

Argued: June 2, 1997

Decided: July 17, 1997

Before RUSSELL and HAMILTON, Circuit Judges, and
HOWARD, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Beth Mina Farber, Assistant Federal Public Defender,
Greenbelt, Maryland, for Appellant. Joyce Kallam McDonald, Assis-
tant United States Attorney, Baltimore, Maryland, for Appellee. **ON
BRIEF**: James K. Bredar, Federal Public Defender, Greenbelt, Mary-
land, for Appellant. Lynne A. Battaglia, United States Attorney, Balti-
more, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

John Burton appeals his conviction of conspiracy to steal government property in violation of 18 U.S.C. § 371 and substantive counts of theft of government property in violation of 18 U.S.C. § 641. We affirm.

I.

John Burton was an employee in the warehouse of the Defense Reutilization and Marketing Office ("DRMO") at the Aberdeen Proving Ground, Aberdeen, Maryland. The DRMO is part of the United States Department of Defense and DRMOs are located at military bases throughout the United States. The DRMO's purpose is to receive excess property from Defense Department agencies and to detain the property for inspection by other federal, state, local and donee agencies which may take the property into their inventory if they can use it, i.e., reutilization. If the property is not reutilized by these agencies, it is held for public auction. Property in poor condition which cannot be reutilized is sent to the scrap yard to be sold for its basic material content.

Each Defense Department agency turning in property to the DRMO "grades" the property they turn in by giving it an alpha designation to show its condition. Property coded "A" represents new property, while Codes F, G, and H represent used property. The employees of the warehouse at Aberdeen Proving Ground had limited authority to authorize property scrapped if the property was coded F, G, or H, its purchase price was under $25,000, and they believed the property was no longer usable.

Certain agencies authorized Burton to change their alpha code. Only Burton, his supervisor, and one other individual were authorized

2

at DRMO to change the alpha codes provided by the turn-in agencies. The government presented evidence that by altering the code, Burton, on his own and in a conspiracy with others, converted government property for his own profit.*

II.

On March 2, 1993, Appellant John Burton was arrested by federal agents on a criminal complaint charging theft of government property in violation of 18 U.S.C. § 641. The complaint was dismissed by the government on March 18, 1994, before a preliminary hearing was held. On February 23, 1995, a grand jury indicted Burton on nine counts, including one count of conspiracy to steal government property in violation of 18 U.S.C. § 371, and eight substantive counts of theft of government property with a value in excess of $100 in violation of 18 U.S.C. § 641. The jury returned a guilty verdict on all but one of the counts.

III.

Burton first contends that the government's delay of almost one year between Burton's arrest and indictment violated his Fifth Amendment Due Process rights. In United States v. Automated Medical Lab., Inc., 770 F.2d 399 (4th Cir. 1985), this court held that when determining whether preindictment delay violates the Fifth Amendment's Due Process Clause, the following two-pronged analysis is to be applied:

> First, a court must assess whether the defendant has suffered actual prejudice, and the burden of proving such prejudice is clearly on the defendant. If the threshold requirement of actual prejudice is met, the court must then consider the Government's reasons for the delay, balancing the prejudice to the defendant with the Government's justification for delay . . . . The basic inquiry then becomes whether the Government's action in prosecuting after substantial delay

_____

*The evidence revealed that Burton would scrap the property to facilitate his theft of it and would then sell or trade the stolen military equipment and clothing.

3

> violates "fundamental conceptions of justice" or "the community's sense of fair play and decency."

Id. at 403-04 (citations omitted); see also Jones v. Angelone, 94 F.3d 900, 904 (4th Cir. 1996). Here, the district court found that Burton failed to establish the threshold prejudice requirement.

As a mixed question of law and fact, the district court's finding of no prejudice will be reversed only if clearly erroneous. United States v. Beszborn, 21 F.3d 62, 66 (5th Cir.), cert. denied, 513 U.S. 934 (1994). Speculative or conclusory assertions of prejudice do not suffice to show prejudice. United States v. Bartlett, 794 F.2d 1285 (8th Cir. 1986). The defendant's burden is a heavy one. Not only must he show actual prejudice but also that the prejudice is substantial. That is, Burton must show that he was meaningfully impaired in his ability to defend against the government's charges to the extent that the disposition of the criminal proceeding was likely affected. Jones, 94 F.3d at 908.

Burton contends he was prejudiced primarily because between the time of his original arrest on March 2, 1994, and his indictment on February 23, 1995, he lost the testimony of his key witness, John Shafer. Shafer, who was Burton's supervisor at DRMO, died on January 31, 1995. Burton claims that it was Shafer who instructed him to scrap out the items which formed the subject of Counts Two through Nine of the indictment. Burton asserts Shafer's testimony was crucial because it would have formed a defense to the charge of felony theft and affected his sentencing.

When the actual prejudice claimed by the defendant is the unavailability of witnesses, a defendant is generally required to "identify the witness he would have called; demonstrate, with specificity, the expected content of that witness' testimony; establish to the court's satisfaction that he has made serious attempts to locate the witness; and finally, show that the information the witness would have provided was not available from other sources." Jones v. Angelone, 94 F.3d at 908. Although Burton has identified the witness he was unable to call due to the preindictment delay and what that witness' testimony may have been, he has not shown that the substance of Shafer's testimony was unavailable from another source. In

4

fact, the district court noted that Burton's immediate supervisor and coworkers were available to testify as to the general policies and procedures at DRMO. J.A. at 92. Furthermore, the trial court correctly noted that the hypothetical testimony of Shafer would have been irrelevant to Burton's alleged violation of 18 U.S.C.§ 371. Based on Burton's limited showing of prejudice, the trial court did not err in determining that the actual prejudice to Burton was minimal.

Even were the court to assume that Burton suffered some slight prejudice as a result of the delay, application of the second prong of Automated Medical Lab. analysis shows that his due process rights were not violated. The government presented evidence demonstrating that the preindictment delay occurred during the time when federal agents traced down the seized property and interviewed those who had turned it in to the DRMO. Another reason for the preindictment delay was that the Assistant United States Attorney originally assigned to the case became ill, and the case had to be reassigned. While the United States may have acted more promptly in this case, careful consideration and a thoroughness of investigation is the more prudent route. Any prejudice to Burton caused by the delay is outweighed by the government's compelling reasons justifying the preindictment delay. Accordingly, this assignment of error is dismissed.

IV.

Burton next argues that the district court erred in enhancing his sentence by two points for an "abuse of a position of trust" under the United States Sentencing Guidelines § 3B1.3. The Sentencing Guidelines authorize a two-point upward adjustment for an abuse of trust. Section 3B1.3 provides:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or the concealment of the offense increase by 2 levels.

In addition, the Application Note to this section states that:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial dis-

5

cretion (i.e. substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature.

The trial court's determination that Burton abused a position of trust will be reversed only if "clearly erroneous."

Burton contends that he did not occupy a position of trust at the warehouse because others who were similarly employed had the same authority. Burton admits that he had authority to change condition codes on certain property.

Burton's argument focuses on the fact that he had the lowest position in the warehouse and that other employees had the same, if not greater, authority than he. This argument alone does not dictate that the trial court's determination was clearly erroneous. Burton possessed sufficient discretion in his job to qualify him for the enhanced two-point penalty. Burton, as well as others, was authorized to change conditions codes in property and to scrap them. Burton used this authority to facilitate stealing government property for his own profit. Accordingly, the trial court's determination that Burton abused a position of trust pursuant to U.S.S.G. § 3B1.3 is affirmed.

V.

Last, Burton presents three assignments of error in a subsequently filed pro se supplemental brief. These contentions are without merit.

First, Burton argues that the Speedy Trial Act should run from March 2, 1994, as though the complaint were not dismissed, since he did not have knowledge of its dismissal until May 18, 1995. Since the dismissal of the complaint is a matter of public record, Burton is deemed to have knowledge of it from the date of its dismissal. In addition, Burton's counsel acknowledged at trial that Burton's speedy trial argument was no longer applicable. J.A. at 19. Accordingly, this claim fails.

6

Next, Burton contends that he received ineffective assistance of counsel, primarily because his defense counsel failed to produce sufficient expert witnesses and failed to object to certain evidence at trial. A claim of ineffective assistance of counsel is not cognizable on direct appeal unless the counsel's deficient performance plainly appears on the face of the record. See United States v. DeFusco, 949 F.2d 114 (4th Cir. 1991). Because ineffective assistance does not plainly appear on the face of the record, Burton presents no meritorious issue.

Finally, Burton claims in his supplemental pro se brief that items were illegally seized by investigators from his house and barn based on an improper search warrant. Since Burton did not object to the evidence from the search or move to suppress it at his trial, he waived any challenge to the constitutionality of the search.

VI.

For the foregoing reasons, the conviction of Appellant is affirmed in all respects.

AFFIRMED