# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 99-1249

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Northern |
| v. | * | District of Iowa |
| | * | |
| Robert Kye Sturdy | * | |
| | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: December 14, 1999

Filed: March 16, 2000

_____

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and KYLE, District Judge.[1]


KYLE, District Judge.


    On April 24, 1998, a jury convicted Robert Kye Sturdy ("Sturdy") of possession

---

[1]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

1

with intent to distribute methamphetamine, possession with the intent to distribute marijuana, carrying a firearm during and in relation to a drug trafficking offense, and possession of a firearm as a previously convicted felon. The district court[2] sentenced Sturdy to a term of imprisonment of 600 months. On appeal, Sturdy challenges the sufficiency of the evidence used to convict him and the 21-month delay between his arrest and his indictment. We affirm.

## I.    Background

On May 17, 1995, Special Agent Scott Gray ("Gray") of the FBI received a call from Bill Price ("Price"), a resident of Waterloo, Iowa, who stated that Sturdy had been to his house that afternoon offering to sell methamphetamine and marijuana. Price provided a description of Sturdy, and also told Gray that Sturdy was driving a white van with Texas license plates and staying at a hotel in the area. Gray searched for the vehicle and found a white van with Texas plates at a Waterloo motel. Gray and Investigator John Pederson ("Pederson") began surveillance of the van. That evening, Gray and Pederson observed the van leaving the parking lot. In separate vehicles, the agents followed the van until it turned off a main highway. Gray and Pederson broke off their surveillance of the van by continuing along the highway. As Pederson drove past the van, he observed the driver as a white male with short blonde hair and glasses. This agent later identified Sturdy as the driver when Sturdy was arrested that night.

---

[2] The HONORABLE MICHAEL J. MELLOY, Chief Judge, United States District Judge for the Northern District of Iowa.

After the van turned, Special Agent Mark Terra ("Terra") assumed surveillance of the van. Terra observed the driver of the van as the van approached his position, and later identified Sturdy as the driver. Terra followed the van to a residential address in Waterloo, where it stopped. At that point, Terra turned over the surveillance to investigators Mark Meyer and Randall Hammitt. This team followed the van for a few blocks after it left the residence, and requested that a marked squad car make a traffic stop of the van. During the traffic stop, the driver refused to obey the patrolman's commands and sped away from the scene. Meyer testified that before the van left, he was able to see the driver's right profile. When Meyer arrested Sturdy later that evening, he recognized Sturdy as the van driver.

At least two police cars engaged in the chase of the van. At some point during the chase, officers saw the driver throw a duffel bag out of the van onto a residential driveway. The lead car alerted trailing cars of the bag's location, and a trailing team picked up the bag. An inventory of the bag revealed that it contained, among other items, approximately $20,000 in cash, a loaded handgun, a digital scale, quantities of methamphetamine and marijuana in cloth bags, two pages of Exel Inn notepaper containing a list of numbers with corresponding references to "pot," "speed," "van," "room," and "gas," and a prescription pill bottle bearing the name Robert Sturdy.

The chase ended after the van turned onto an unimproved road and crashed into a house. The pursuing officers, who had briefly lost sight of the van, exited their vehicles and ran to the driver's side of the van. Upon finding the van unoccupied, the officers began to search for the driver. Meyer found Sturdy running behind a house about a block and a half away and arrested him. A search of Sturdy's person revealed $2000 in cash, a telephone calling card in the name of Bryan Russell, credit cards in

3

the name of Robert Sturdy, a date book, and paper with numbers and terms on it. In addition, it was later determined that Sturdy had several cracked ribs. A search of the van produced a wallet with a driver's license, Social Security card, and credit cards for Robert Sturdy, and a Texas driver's license for Bryan Russell with the photograph cut out. Police also found additional drug paraphernalia and correspondence addressed to Robert Sturdy in the van.

Police continued the investigation at the motel where Gray first observed the white van. Investigators discovered that one of the rooms had made a phone call to Texas. The registration card for that room had been signed by a "Bryan Russell" and listed the license plate number of the van involved in the chase. Officers secured that room and obtained a search warrant.

When the police made contact with the occupants of the room, they encountered a woman who identified herself as "Christine Sage." Police later identified her as Jaime Maggard ("Maggard"). A search of the room produced a phone bill for Robert Sturdy, a cloth bag similar to the bags found in the duffel bag thrown from the van, various drug paraphernalia, a drugstore receipt for Robert Sturdy, and a notebook containing a marriage license, birth certificates, and stock certificates with the names covered in white-out and the names "Bryan Edward Russell" and "Christine Lynn Sage" written in.

At trial, the government elicited testimony from the law enforcement officers involved detailing the facts listed above. Additionally, the government presented the informant who Sturdy visited on May 17, 1995, and Bryan Edward Russell of Lone Oak, Texas, who testified that his truck and his wallet had been stolen in Texas about

4

three months before the incident. The defense called Bret Brown ("Brown"), an acquaintance of Sturdy, and Maggard as witnesses. Both witnesses testified that Sturdy and Maggard were in Waterloo with a "Bryan Russell" to purchase a van for Brown, and that this "Bryan Russell," not Sturdy, was driving the van during the police surveillance and chase of the vehicle. Maggard testified that Sturdy was with her and another friend, when they happened to pass the white van as it was being chased by police. According to Maggard, Sturdy was at the crash site because she and Sturdy followed the van in their vehicle and Sturdy ran to the van when he realized that it had crashed into a house.

## II.     Sufficiency of the Evidence

Sturdy has challenged the sufficiency of the evidence supporting his conviction. "In reviewing the sufficiency of the evidence to support a guilty verdict, we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict." United States v. Davis, 154 F.3d 772, 786 (8th Cir. 1998) (quoting United States v. Plenty Arrows, 946 F.2d 62, 64 (8th Cir. 1991)), cert. denied, 119 S. Ct. 1072, 1078, 1090 (1999). "We will reverse only if 'no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" United States v. Escobar, 50 F.3d 1414, 1419 (8th Cir. 1995) (quoting United States v. Frayer, 9 F.3d 1367, 1371(8th Cir. 1993)).

In this case, there is more than sufficient evidence to support the jury's verdict. Three law enforcement officers observed the driver at three different points in time –both before and after the van stopped at a house in Waterloo– and subsequently identified Sturdy as the driver. Furthermore, the physical evidence obtained from

searches of Sturdy, the van, and the motel room corroborated the officers' testimony that Sturdy was driving the van and the government's allegation that Sturdy was using the name "Bryan Russell" as an alias while in Waterloo, Iowa. Finally, the testimony of Bryan Russell cast substantial doubt on the version of events offered by Sturdy and the defense witnesses. Thus, ample evidence exists to support the jury's determination that Sturdy, not Bryan Russell, was driving the van, and that Sturdy possessed the drugs and firearm found in the duffel bag. Accordingly, we find that Sturdy's challenge to the sufficiency of the evidence is without merit.

## III. Delay between arrest and sentencing

Sturdy also appeals his conviction based on the 21-month delay between his arrest and his arraignment on the charges presented at trial. The Due Process Clause of the Fifth Amendment protects a criminal defendant against unreasonable pre-indictment delay. See United States v. Bartlett, 794 F.2d 1285, 1289 (8th Cir. 1986). To prove a violation of his due process rights, Sturdy must establish that: (1) the delay resulted in actual and substantial prejudice to the presentation of the defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him. See United States v. Brockman, 183 F.3d 891, 895 (8th Cir. 1999), cert. denied, 120 S. Ct. 800 (2000). The court will inquire into the reasons for delay only where actual prejudice has been established. See United States v. Savage, 863 F.3d 595, 598 (8th Cir. 1988). "To prove actual prejudice, a defendant must specifically identify witnesses or documents lost during delay properly attributable to the government." Bartlett, 794 F.2d at 1290. It is not sufficient for a defendant to make speculative or conclusory claims of possible prejudice as a result of the passage of time. See Brockman, 183 F.3d at 895. Finally, it is the defendant's burden to show

that the lost testimony or information is not available through other means. See Bartlett, 794 F.2d at 1290. In the instant case, the district court found that Sturdy failed to establish actual prejudice. We review the district court's decision for clear error. See id. at 1291 n.7.

Sturdy alleges that the delay prejudiced his defense because he was unable to locate the hotel clerk who could identify the person who rented the motel room searched by the police on May 17, 1995. The district court found this assertion of prejudice "extremely speculative." We agree. It was not clear error for the district to court to find speculative the prospect that the lost hotel clerk would have identified someone other than Sturdy, or, for that matter, anyone at all. Indeed, one of the motel clerks who did testify at trial stated that she rarely remembered any guests other than the motel's "regulars." Furthermore, Sturdy has failed to establish that this testimony was not available through other sources. See Bartlett, 794 F.2d at 1290. Maggard testified at trial that someone other than Sturdy rented the room in question, namely Bryan Russell. Thus, Sturdy was able to introduce evidence regarding the identity of the individual who rented the motel room despite the pre-indictment delay.

Because the lost testimony was both speculative and available through other sources, the district court did not commit clear error in holding that Sturdy had not met his burden of showing actual and substantial prejudice. Accordingly, we affirm the denial of Sturdy's motion to dismiss for pre-indictment delay.

**IV.   Conclusion**

For the reasons stated above, we affirm the judgment of the district court.

7

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT