# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3425

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Gerald Jackson, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: March 14, 2006
Filed: May 8, 2006

_____

Before WOLLMAN, FAGG, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The government appeals the district court's dismissal, based on unreasonable pre-indictment delay, of an indictment against Gerald Jackson. We reverse and remand for trial.

## I.

In July and August of 2001, the Nebraska State Patrol, the United States Postal Investigation Service, the Federal Bureau of Investigation (FBI), and the Douglas County Sheriff's Office were engaged in an on-line enticement investigation involving Jackson. During that period, Jackson is alleged to have engaged in sexually

suggestive on-line chats with an agent of the Postal Investigation Service who was using the identity of "k8tee4fun." The agent, an adult male, represented to Jackson that he was a 14-year-old girl.

On August 14, 2001, law enforcement officers observed Jackson travel to a park in Omaha, Nebraska, where he was to meet "k8tee4fun." Jackson did not stop at the park. Instead, he returned home, where he was arrested by state officials. The FBI seized Jackson's computer, and Jackson spent one night in the Douglas County jail. On August 15, 2001, Jackson was charged in Nebraska state court with conspiracy to commit sexual assault. The state charges were dismissed on February 11, 2002, on the ground that, under Nebraska state law, a defendant cannot conspire with an undercover government agent. Although Jackson's counsel requested the return of Jackson's computer on April 25, 2002, the FBI retained custody of the computer and indicated to Jackson that a federal investigation was ongoing. The record does not reflect any further investigation.

On November 3, 2003, the Nebraska State Patrol presented Jackson's case, along with a number of similar cases, to the United States Attorney's Office. The case was first assigned to an assistant United States attorney who had never handled an on-line enticement case and who was planning to retire within the year. As part of his pre-retirement case processing, this prosecutor assigned a low priority to Jackson's case, with the result that no federal charges were filed during the remainder of his tour of duty, which ended on October 1, 2004. On September 28, 2004, Jackson's case was reassigned to another prosecutor. On February 24, 2005, Jackson was indicted for using a computer to knowingly attempt to persuade, induce, and entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). Jackson subsequently filed a motion to dismiss, arguing that the pre-indictment delay violated his Fifth and Sixth Amendment rights.

A magistrate judge recommended that the indictment be dismissed as a violation of Jackson's Sixth Amendment speedy trial rights. The district court, recognizing that the Sixth Amendment is inapplicable to pre-indictment delay cases, proceeded to dismiss the indictment on Fifth Amendment due process grounds, relying largely on Sixth Amendment speedy trial precedents.

## II.

Two provisions of the United States Constitution guard criminal defendants against unreasonable pre-trial delay. First, the Sixth Amendment provides a right to a speedy trial in all criminal prosecutions, a protection that attaches to the earlier of arrest or indictment.[1] United States v. Sprouts, 282 F.3d 1037, 1042 (8th Cir. 2002). Sixth Amendment speedy trial issues are analyzed using the four-factor balancing test established in Barker v. Wingo, 407 U.S. 514 (1972). This test requires the court to consider the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Sprouts, 282 F.3d at 1042.

Second, while statutes of limitations provide the primary guarantee against delay prior to indictment or arrest, the due process clause of the Fifth Amendment does play a limited role in protecting against oppressive delay. United States v. Brockman, 183 F.3d 891, 895 (8th Cir. 1999). The Supreme Court has recognized that "the interests of the suspect and society are better served if, absent bad faith or extreme prejudice to the defendant, the prosecutor is allowed sufficient time to weigh and sift evidence to ensure that an indictment is well founded." United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850), 461 U.S. 555, 563 (1983). As a result, a defendant must overcome a high hurdle when contending that a pre-

---

[1]Although Jackson was arrested by state officials on August 15, 2001, he was released from custody and the state charges were subsequently dismissed. He does not claim that his Sixth Amendment speedy trial right attached at the time of that arrest.

indictment delay that does not violate the statute of limitations is violative of the due process clause.

In contrast to the balancing test used in Sixth Amendment cases, defendants claiming a due process violation for pre-indictment delay must carry the burden of proof on two separate elements. The defendant must establish that: (1) the delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him.[2] United States v. Sturdy, 207 F.3d 448, 452 (8th Cir. 2000); see also United States v. Grap, 368 F.3d 824, 829 (8th Cir. 2004); Sprouts, 282 F.3d at 1041.

With all due respect, we conclude that the district court did not adequately distinguish between the standards for evaluating these two different types of unreasonable delay claims. Both the district court and Jackson rely on $8,850 and United States v. Valenzuela-Bernal, 458 U.S. 858 (1982), for the proposition that the standard governing a Fifth Amendment pre-indictment delay claim is essentially the same as that for a Sixth Amendment speedy trial claim. See, e.g., D. Ct. Order at 4 (citing $8,550 for the proposition that "[t]he four-factor balancing test of Barker v. Wingo provides 'the relevant framework' to determine whether a delay is reasonable in the due process context"); id. at 5 (citing Valenzuela-Bernal in support of the proposition that "[t]he same prejudice requirement is applicable to cases of pre- and post-indictment delay"). Our reading of both $8,850 and Valenzuela-Bernal leads us to a different conclusion.

$8,850 did not involve a criminal indictment. In that case, the Supreme Court examined whether an eighteen-month delay between the seizure of currency and the

---

[2]We note that the Supreme Court has suggested in dicta that the state-of-mind prong might be satisfied if the government delay was "in reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges." $8,850, 461 U.S. at 563.

filing of a civil proceeding for forfeiture violated the claimant's due process rights. 461 U.S. at 556. There was disagreement over which standard to apply in that situation. The government argued that "the standard for assessing the timeliness of the suit [should] be the same as that employed for due process challenges to delay in instituting criminal prosecutions." Id. at 563. The Court rejected this argument:

> We reject the Government's suggestion that Lovasco[3] provides the appropriate test for determining whether the delay violates the due process command. . . .
>
> A more apt analogy is to a defendant's right to a speedy trial once an indictment or other formal process has issued. In that situation, the defendant no longer retains his complete liberty. . . . In Barker v. Wingo, we developed a test to determine when Government delay has abridged the right to a speedy trial. The Barker test involves a weighing of four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

Id. at 563-64 (internal citations omitted).

Although the district court and Jackson are technically correct in saying that $8,850 involved due process considerations, the Supreme Court distinguished between criminal cases and civil forfeiture cases and indicated that the Lovasco test and the four-factor Barker v. Wingo balancing test constitute distinct legal standards. $8,850 is thus not supportive of the assertion that the Barker v. Wingo test is applicable in pre-indictment delay cases.

Similarly, Valenzuela-Bernal did not involve a case of pre-indictment criminal delay. That case involved a claim of prejudice by a criminal defendant convicted of transporting illegal aliens, who claimed that some favorable witnesses to his defense

---

[3]United States v. Lovasco, 431 U.S. 783 (1977), is a seminal case defining the Fifth Amendment due process test applicable in cases of pre-indictment delay.

had been deported. The defendant argued that this action had deprived him of his Fifth Amendment due process rights and his Sixth Amendment right to compulsory process. 458 U.S. at 861. In addressing whether the loss of these witnesses had materially compromised the defendant's defense, the Court discussed its precedents evaluating prejudice in both the Fifth Amendment pre-indictment delay and Sixth Amendment speedy trial contexts. In the pre-indictment delay context, the Court recognized that "when the Government has been responsible for delay resulting in a loss of evidence to the accused, we have recognized a constitutional violation only when loss of the evidence prejudiced the defense." Id. at 868.

After some further discussion of the Fifth Amendment pre-indictment delay prejudice requirement, the Court went on to state, "The same 'prejudice' requirement has been applied to cases of postindictment delay." Id. at 869. Jackson relies on this sentence to support the argument that his anxiety is relevant to the Fifth Amendment pre-indictment delay inquiry. This sentence, however, does not bear the weight that Jackson's argument places upon it, for the Court did not say that the prejudice inquiry is identical in both the pre-indictment delay and speedy trial contexts. Jackson would have us to conclude that the Supreme Court, in a case involving no unreasonable pre-indictment delay, adopted a standard in those cases that recognized a type of prejudice that had never previously been considered relevant to the finding of a constitutional violation. We decline to read that much into the Court's holding in Valenzuela-Bernal.

## III.

We turn next to determine whether Jackson has made a sufficient showing of actual prejudice resulting from the pre-indictment delay, a burden that is his to bear. United States v. Bartlett, 794 F.2d 1285, 1289 (8th Cir. 1986). To satisfy this burden, the defendant must identify specific witnesses or documents lost during the delay and the information they would have provided. United States v. McDougall, 133 F.3d

1110, 1113 (8th Cir. 1998). Further, the defendant must show that the missing testimony or information is not available through other sources. <u>Bartlett</u>, 794 F.2d at 1290. Alleged prejudice is insufficient to establish a due process violation if it is insubstantial, speculative, or premature. <u>Grap</u>, 368 F.3d at 829.

The prejudice alleged here does not rise to the level required to establish a due process claim. Jackson makes only three claims of possible prejudice: (1) the possible automatic deletion of files from Jackson's computer, to which he has been denied access; (2) the diminishment of the memory of the officers involved; and (3) emotional, financial, and social discomfort to Jackson during the period he was awaiting indictment.

Jackson, however, did not show with specificity any particular exculpatory computer file that may have been destroyed or any specific witness who had forgotten some important detail. Jackson's argument before the magistrate judge is illustrative of the speculative and conclusory nature of his claims of prejudice to his defense:

> Now, it is extremely hard to show specific prejudice if you have a witness who can't be found, you have a witness that can't remember or for whatever reasons. . . . [I]t is difficult to show other than we have a long period of time.
>
> . . . .
>
> Now, the main reason I think for prejudice . . . is that even though you do not have evidence of specific prejudice, it is basically presumed over time.

Motion Tr at 13-14. At oral argument, Jackson's counsel conceded that the record does not contain any evidence showing specific prejudice due to faded memories or lost computer files.

Jackson attempts to remedy this deficiency by relying on Doggett v. United States, 505 U.S. 647 (1992), for the proposition that "Jackson is entitled to 'presumptive prejudice' due to the length of delay in his case." Jackson Br. at 13. Doggett, however, dealt with the presumption of prejudice in cases of post-accusation delay, which implicate the Sixth Amendment speedy trial right, 505 U.S. at 652 n.1, a presumption that is not recognized in the Fifth Amendment due process analysis applicable here, see, e.g., Bartlett, 794 F.2d at 1290. Jackson's speculative claims about possible lost computer files and possibly weakened memories of witnesses are not sufficient to meet the requirement of actual and substantial prejudice established by our prior Fifth Amendment cases. This is especially the case in a prosecution such as this one, where nearly all of the evidence of the actual crime alleged has been memorialized in transcripts of the on-line chats between Jackson and the undercover agent.

Jackson's asserted emotional, financial, and social distress similarly fails to support a claim of actual and substantial prejudice to the presentation of his defense. The district court and Jackson both rely on Moore v. Arizona, 414 U.S. 25 (1973), for the proposition that the prejudice inquiry is not limited to impairments of the defendant's ability to present an effective defense. Moore, like Doggett, was a Sixth Amendment case involving post-charge delay. Id. at 25. Our Fifth Amendment pre-indictment delay cases, on the other hand, have consistently limited the prejudice inquiry to the effects of the delay on the defendant's ability to present an effective defense. Bartlett, 794 F.2d at 1290; see also Grap, 368 F.3d at 829; Sprouts, 282 F.3d at 1041; Sturdy, 207 F.3d at 452; McDougall, 133 F.3d at 1113.

Our holding should not be construed as our approval of the government's handling of this case. Nor should it in any way be construed as encouraging the government to "gamble with the interests of criminal suspects assigned a low prosecutorial priority." Doggett, 505 U.S. at 657. The government here failed the public's interest in the timely prosecution of a serious criminal offense, one that

Congress created to protect children from on-line sexual predators. Notwithstanding these concerns, we conclude that Jackson has failed to establish a constitutional violation based on pre-indictment delay, and thus the district court erred in granting the motion to dismiss the indictment.

The judgment of dismissal is reversed, and the case is remanded for trial.

_____