# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4071

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| James Hance, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 15, 2007
Filed: August 16, 2007 (Corrected: 08/22/2007)

_____

Before BYE and SMITH, Circuit Judges, and NANGLE,[1] District Judge.

_____

SMITH, Circuit Judge.

James Hance was indicted on five counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342. Hance moved the district court to dismiss the charges, contending that the indictment was flawed. The district court rejected Hance's efforts to invalidate the indictment. After trial, the district court sentenced Hance to 51 months' imprisonment. Hance appeals the district court's denial of his motions to dismiss, one of the court's evidentiary rulings, and three of six sentencing enhancements. We affirm

_____

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

the motions to dismiss and evidentiary ruling, but reverse and remand for resentencing.

## I. *Background*

Hance orchestrated a mail fraud scheme that began in 1995 by renting a post office box in New York under an assumed name. Three years later, Hance began his "Wealth Building Program," which required participants to send Hance $25.00 cash and 10 first class postage stamps in exchange for a list of 200 "very responsive" names and addresses. These participants would enroll a new generation of participants by selling them a list of 200 names and addresses. Hance mailed an estimated 234,000 individuals his program, promising the recipients the opportunity to rapidly earn large incomes. Hance received a commission at every level of sale.

The program's information packet contained a two-page promotional flyer detailing the program's mechanics, testimonials from several individuals who claimed high financial reward from the program, a letter from an attorney—J.R. Thompson—verifying the legality of the program, and a page answering frequently asked questions. The information packet also included a telephone number for Thompson and a guarantee that the "U.S. Postal Service [USPS] has determined that this program is entirely legal . . . ."

The USPS launched an investigation into Hance's Wealth Building Program, initially focusing upon Hance's false claim that the USPS had approved the program. In July 1999, federal authorities, pursuant to a warrant, searched Hance's home. They found a list of nearly 24,000 participants, $30,000 worth of first class stamps, and large amounts of cash in small denominations. Investigators testified that Hance told them that he was simply a middle man, forwarding the cash, stamps, and other materials to a corporate headquarters in Belize where all official records were kept. But, postal investigators found no connection between Hance and any Belizean corporation.

The investigators also could not find J.R. Thompson—the alleged attorney whose name appeared in the information packet—or any of the individuals whose names appeared in the testimonial. Hance later admitted that he did not know the individuals appearing in the testimonial and that the information packet had been copied from a different program run by business associates who had assured him that the program was legal. He also admitted that he copied the Thompson letter from the original program but changed the telephone number.

On May 11, 2004, one month before the statute of limitations would have run, the government charged Hance with five counts of mail fraud. A jury found Hance guilty of four of them, and the district court sentenced him to 51 months' imprisonment, a $10,000 fine, and $498,333 in restitution. Hance appeals, raising five arguments challenging both his conviction and sentence. We affirm in part and reverse in part.

## II. *Discussion*

Hance avers that: (1) the indictment was flawed and filed impermissibly late in violation of his due process and statutory rights; (2) the evidence was insufficient to substantiate the jury's verdict; (3) an undisputed evidentiary error prejudiced his defense; (4) the prosecutor engaged in misconduct; and (5) the district court erred by enhancing his sentence based upon the total loss to victims, sophisticated means, and obstruction of justice.

## A. *The Indictment*

Prosecution for mail fraud is subject to a five-year statute of limitations pursuant to 18 U.S.C. § 3282. To comply with the statute, the government was required to file an indictment by July 21, 2004. The government filed a five-count indictment on May 11, 2004. The government filed a superseding indictment on July, 27, 2004—six days after the statute of limitations expired—alleging the same five counts and several additional facts; no new counts were added to this indictment.

Hance avers that the district court erred by rejecting his motion to dismiss because the indictment was: (1) time-barred by the five-year statute of limitations; (2) filed in a manner that caused an unreasonable delay in violation of his due process rights; and (3) insufficient as a matter of law.

### 1. *Statute of Limitations*

We review de novo the district court's denial of Hance's motion to dismiss. *United States v. Dolan*, 120 F.3d 856, 867 (8th Cir. 1997). Hance contends that the statute of limitations expired before the government filed the indictment. Hance acknowledges that "a superseding indictment filed while the original indictment is validly pending relates back to the time of filing of the original indictment if it does not substantially broaden or amend the original charges." *United States v. Gomez*, 38 F.3d 1031, 1036 n.8 (8th Cir. 1994). But, Hance contends that the original filing was substantially and unfairly broadened because the government's superceding indictment added facts affecting sentencing. We disagree.

The Supreme Court implicitly rejected this argument in *Booker,* where the Court stated that requiring the government to allege sentencing facts in an indictment "would create a system far more complex than Congress could have intended." *United States v. Booker,* 543 U.S. 220, 254 (2005). In fact, the Supreme Court explicitly noted that requiring the government to allege sentencing facts in a complex mail fraud case "would destroy the system." *Id.* at 253, 254; *United States v. Glover*, 413 F.3d 1206 (10th Cir. 2005) ("However, the Court did not hold that facts supporting sentencing factors had to be included in the indictment."). Because sentencing facts are not required in the indictment, we conclude that their later inclusion does not substantially broaden or amend the original charges and thus find no error in the district court's denial of Hance's motion to dismiss the indictment.

## 2. *Unreasonable Delay*

Hance also avers that the government prejudiced his defense by unreasonably delaying the filing of the indictment.[2] Because Hance was indicted within the statute of limitations period, he is required to show, *inter alia*, that the delayed filing caused him actual prejudice. *United States v. Bartlett*, 794 F.2d 1285, 1289–1290 (8th Cir. 1986). We review for clear error the district court's finding that he did not make this showing. *United States v. Sturdy*, 207 F.3d 448, 452 (8th Cir. 2000). To show actual prejudice, the defendant must identify specific, concrete, and germane testimony or documents that were lost due to the delay. *Bartlett*, 794 F.2d at 1289–1290. Hance does not identify any absent witnesses or missing documents that prejudiced his defense. Instead, he makes general grievances, arguing that alleged victims would likely not remember mailing a pittance to his company years ago. Hance fails to show unreasonable delay under our precedent. As we have noted before, "[s]peculative or conclusory claims alleging 'possible' prejudice as a result of the passage of time are insufficient." *Id.* Because Hance cannot offer concrete examples demonstrating that his defense was prejudiced, we hold that the district court did not err.

## 3. *Sufficiency of Indictment*

Hance also challenges the sufficiency of his indictment, contending that the government failed to allege several vital facts. "A challenge to the sufficiency of the indictment is a question of law that we review de novo." *Dolan*, 120 F.3d at 864 (internal quotation and citation omitted). "To be sufficient, an indictment must fairly inform the defendant of the charges against him and allow him to plead double jeopardy as a bar to future prosecution." *Id.* "Typically an indictment is not sufficient only if an essential element of the offense is omitted from it." *United States v. Cuervo*,

---

[2]Hance also alleges that the indictment violates the doctrine of laches; however, he points to no cases where latches has been applied to a criminal proceedings. Assuming, *arguendo*, that the doctrine does apply, we note that the application of the doctrine would require Hance to make a showing of prejudice. For the reasons outlined, we believe that he failed to make this showing.

354 F.3d 969, 985 (8th Cir. 2004). Hance does not argue that his indictment failed to list an essential element of his offense. Instead, he argues that the government failed to list every false statement that he allegedly made to his victims. Hance may, as a matter of course, have been entitled to those details; however, this information need not be included in an indictment, but may be requested through a bill of particulars. *United States v. Arenal*, 768 F.2d 263 (8th Cir. 1985) ("The purpose of a bill of particulars is to inform the defendant of the nature of the charges against him, and to prevent or minimize the element of surprise at trial."). The record does not reflect that Hance requested a bill of particulars; therefore, the government was under no obligation to volunteer such information. Accordingly, we hold that the indictment was sufficient.

## B. *Sufficiency of Evidence*

Hance avers that the evidence was insufficient to sustain his conviction. "Evidence is sufficient to sustain a conviction if, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Craft,* 478 F.3d 899, 900 (8th Cir. 2007). The government also receives the benefit of all reasonable inferences that may be deduced from the evidence. *Id*. "We will set aside a verdict only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *Id*.

The government charged Hance, in short, with intentionally causing four individuals to mail materials containing false statements. Hance alleges that the government failed to prove three elements of the offense: (1) the materials contained false statements; (2) Hance knew that the statements were false; and (3) the false statements caused the four participants to mail the materials associated with the Wealth Building Program.

To support its charges, the government introduced evidence of Hance's statements that the USPS had reviewed the Program and that an attorney, one "J.R. Thompson," vouched for its authenticity. On this record, we have little difficulty holding that a reasonable juror could find that these statements were false. Postal authorities testified that they never approved Hance's Program. In fact, these authorities testified that the USPS, as a matter of policy, does not offer advice regarding the legitimacy of business models. Likewise, the government also showed that the statements from Thompson were false. In fact, the government successfully called into question whether Thompson even existed. The government also adduced evidence showing that Hance created the fraudulent materials. The jury could have reasonably deduced that Hance knew his statements were false when made. Lastly, Hance's victims testified that they relied upon these false statements when they enrolled in the program and when they attempted to enroll others.

Hance attempted to present a good-faith defense at trial, but this defense would only negate the allegation that he knew the evidence was false. To support his good-faith defense, Hance offered only his own testimony. When viewing the evidence in a light most favorable to the verdict, giving the government the benefit of reasonable inferences that may be drawn from the evidence, the evidence was sufficient to sustain the verdict.

## C. *Evidentiary Error*

At trial, Hance, in an effort to buttress his good-faith defense, attempted to testify about his conversations with Rosemary Wilson, a business associate whom Hance claims assured him that the Wealth Building Program was legitimate.[3] The

---

[3]Hance also avers that the district court erred when it refused to allow him to testify about a conversation with Ray Durr, his lawyer who died shortly before trial and whom Hance claims told him that the program was legal. Although the district court originally refused to permit the jury to hear this testimony, it soon realized its error and allowed him, in the same direct examination, to testify about his

district court did not permit this testimony, concluding that the conversation was hearsay. But, on a motion for a new trial, the court admitted error, noting that the information was not being entered for the truth of the matter asserted—that the operation was legal—but was offered to show the statement's impact upon the listener. "We will reverse a conviction based on erroneous evidentiary rulings only if the error had a substantial impact on the jury's verdict." *United States v. Ryder*, 414 F.3d 908, 916 (8th Cir. 2005). As the district court concluded that it committed error, our analysis is focused on whether the error prejudiced the defendant. *United States v. Lopez,* 384 F.3d 937, 942 (8th Cir. 2004).

We conclude that Hance was not prejudiced. First, as we have already noted, Hance's guilt was established with highly persuasive and largely unrebutted evidence. Second, despite the error, Hance adduced testimony showing that he mistakenly believed that his Wealth Building Program was legal. For example, Hance was able to discuss a conversation with Raymond Durr, who Hance claims also advised him that the Program was legal. Third, and perhaps most importantly, there is no evidence, other than Hance's word, that witness Wilson even existed. In response to questions from both government and defense counsel, Hance admitted that he did not have Wilson's telephone number, mailing address, or e-mail address. Further, Hance never mentioned Wilson to authorities before testifying. Based upon the strength of the government's case, the weakness of the testimony regarding Wilson, and Hance's opportunity to present other evidence supporting his good-faith defense, we conclude that Hance was not prejudiced by the district court's error.

## D. *Prosecutorial Misconduct*

Hance also avers that the prosecutor engaged in misconduct, chiefly by telling the jury during closing that Hance had no basis for asserting that the program was

---

conversation with Durr. Therefore, as Hance was able to testify about his conversation with Durr, the court committed a harmless error.

legal.[4] Hance did not timely object to the prosecutor's remark; therefore, we review under the plain-error standard and will reverse only "if there is 1) error 2) that is plain and 3) affects the defendant's substantial rights." *United States v. Robinson*, 439 F.3d 777, 780 (8th Cir. 2006). "To obtain a reversal for prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial." *Id*. "If we reach the second step, we consider: (1) the cumulative effect of such misconduct (2) the strength of the properly admitted evidence of [defendants'] guilt; and (3) the curative actions taken by the trial court." *United States v. Cannon*, 88 F.3d 1495, 1502 (8th Cir. 1996).

Even if we were to conclude that these comments were in error, we cannot say that this error was plain or affected Hance's substantial rights. The adverse effects of this conduct, if any, were negligible. The jury heard Hance's rather weak evidence supporting his good-faith defense. The jury also saw the government effectively attack Hance's credibility, calling into question whether Thompson and Durr had really offered the legal advice that formed the foundation of Hance's good-faith defense. Lastly, no curative action was taken by the court because the defendant did not object in a timely manner. We conclude that Hance was not prejudiced.

### E. *Sentencing*[5]

Hance was sentenced to 51 months' imprisonment, a sentence at the bottom of his Guidelines range. The Presentence Report (PSR) set Hance's offender characteristic at Category I and his base offense level at six. The district court calculated a final offense level of twenty-four after imposing a ten-level increase

---

[4]Hance also alleges a handful of smaller grievances, such as intentionally filing the indictment unreasonably late. We find that these, independently or collectively, do not constitute prosecutorial misconduct.

[5]In order to avoid ex post facto concerns, the district court sentenced Hance according to the 1998 version of the Guidelines.

based upon the total loss to his victims, a two-level increase for committing a crime involving more than minimal planning, a two-level increase for the use of mass-marketing, a two-level increase for using sophisticated means, and a two-level increase for obstruction of justice. Hance appeals the total-victim-loss enhancement, sophisticated means enhancement, and obstruction of justice enhancement.

We review the district court's application of the facts to the Guidelines de novo; its factual findings for clear error, and the ultimate sentence that it imposed for reasonableness. *United States v. Tjaden*, 473 F.3d 877, 879 (8th Cir. 2007); *United States v. Watson*, 480 F.3d 1175 (8th Cir. 2007).

### 1. *Loss Calculation*

Hance avers that the district court erred in its calculation of the loss amount. We disagree.

We review the district court's loss calculation "for clear error and reverse only if we are left with the definite and firm conviction that the district court erred." *United States v. Whatley*, 133 F.3d 601, 606 (8th Cir. 1998). The trial court must use a rational calculation method that yields a reliable estimate of the loss; however, the methodology does not have to be mathematically precise. *Id*. On appeal, Hance faces a heavy burden as the district court's loss calculation is entitled to particular deference. *United States. v. Ameri*, 412 F.3d 893 (8th Cir. 2005).

The district court gave two independent justifications for its estimation that the loss amount loss ranged between $500,000 and $800,000. The first justification is rooted in Hance's own testimony. At trial, Hance testified that he earned roughly $500,000 in gross income between January and July 1999. This testimony is consistent with the ordered amount of restitution, $498,333, which Hance does not challenge and was calculated based upon business receipts seized from Hance's home. Hance's testimony and the restitution amount is more than sufficient to meet our

rational-and-reliable standard. We note that, under the Guidelines, the court's estimate is a very conservative figure. U.S.S.G.§ 2F1.1, cmt. n.4 (1998) ("The offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss.").

Because the district court's calculation based upon the defendant's testimony is rational and reliable, we need not consider the court's alternative grounds for calculating the total loss. Accordingly, we affirm the ten-level enhancement based upon the district court's loss calculation.

### 2. *Sophisticated Means*

Hance also avers that the district court erred by imposing a two-level enhancement for sophisticated means. We agree.

The 1998 Guidelines permit a court to enhance a sentence for sophisticated means if the defendant's fraudulent conduct was "especially complex or especially intricate . . . ." U.S.S.G. § 2F1.1, cmt. n.15.[6] Whether a scheme is sophisticated must be viewed in light of the fraudulent conduct and differentiated, by assessing the intricacy or planning of the conduct, from similar offenses conducted by different defendants. *United States v. Lewis*, 93 F.3d 1075, 1080 (2d Cir. 1996) (analyzing a similar sophisticated means provision found in U.S.S.G. § 2T1.1(b)(2)). Therefore, the government must show that Hance's mail fraud, when viewed as a whole, was notably more intricate than that of the garden-variety mail fraud scheme.

The PSR did not analyze whether Hance used sophisticated means. The district court, however, found that Hance: (1) rented a post office box in New York under an assumed name and, in the national mailings to his victims, used this post office box

---

[6]As already noted, the district court sentenced Hance under the 1998 Guidelines. "Section 2F1.1 no longer exists under the current version of the Guidelines." *United States v. Edelmann,* 458 F.3d 791, 814 n.5 (8th Cir. 2006).

-11-

as his return address and (2) included, in the mailings, the fake testimonials from individuals and the letter from Thompson.[7] The district court did not clearly err in finding these facts, as they are supported by the record; however, these acts, when measured for their complexity and intricacy, do not distinguish themselves from the multitude of other mail fraud cases. Renting a post office box under an assumed name is a common means of carrying out mail fraud.[8]

The 1998 Guidelines' commentary offers an example of sophisticated means "in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but

---

[7]At oral argument, the government also argued that Hance's formation of a Delaware corporation to shield his activities is a strong factor justifying an enhancement for sophisticated means. However, the government did not make this argument in its response to the presentencing report, at sentencing, or in its brief to this court. Therefore, the district court did not include the corporation in its factual findings and we do not consider it here.

[8]*See e.g. United States v. Vanhorn*, 296 F.3d 713, 716 (8th Cir. 2002) ("Vanhorn was also using numerous other post office boxes under various names"); *United States v. Borjesson,* 46 F.3d 1146 (9th Cir.1995) ("[t]he evidence showed that Borjesson rented a post office box in the name of Amstar") (unpublished); *United States v. Lively*, 20 F.3d 193, 195 (6th Cir. 1994) ("Lively had been receiving numerous mail parcels under various fictitious names at Post Office Box 1175"); *United States v. Bell*, 953 F.2d 6, 7 (1st Cir. 1992) ("Bell had rented a post office box using the alias 'Eric McGrath' prior to his arrest."); *United States v. Piccione*, 1995 WL 148950, *2 (1st Cir. 1995) ("Piccione had rented Box 20256 in October 1992 under the alias Mark S. LaRoche.") (unpublished); *United States v. Garza*, 429 F.3d 165, 169 (5th Cir. 2005) ("one of the misleading [ ] post office boxes used in the scheme was opened in the name of defendant's company."); *United States v. Bassfield*, 217 F.3d 841 (4th Cir. 2000) ("Bassfield applied for the post office box with a fake identification card") (unpublished); *United States. v. Adeniji*, 221 F.3d 1020, 1027 (7th Cir. 2000) ("the evidence against Adediran . . . includ[ed] the use of aliases to open a post office box"); *United States v. Kesop,* 2000 WL 92266 (6th Cir. 2000) (unpublished) ("Both boxes were rented by Uwadia Osaghae [ ] and a companion in February 1997, using the names 'Vanisree Suverna,' 'William Cox,' and 'Virginia Bell.'").

-12-

locating soliciting operations in another jurisdiction would ordinarily indicate sophisticated means." Hance did not do this. Hance is a resident of Boonville, New York. The post office box that he rented and the address that he used for business was Boonville, New York.[9]

Hance's actions, traditionally, are better evaluated under the more-than-minimal planning enhancement, which the district court also imposed. U.S.S.G. §§ 2F1.1; 1B1.1, cmt. n.1(f) (defining more than minimal planning as an offense involving "more planning than is typical for commission of the offense in a simple form" and "is deemed present in any case involving repeated acts over a period of time."). Courts have repeatedly upheld more-than-minimal-planning enhancements where the defendant engaged in conduct similar to that of Hance's. *See United States v. Hearrin*, 892 F.2d 756, 759 (8th Cir. 1990) (upholding a more-than-minimal-planning enhancement where "the Hearrins created a fictitious business name, opened both a post office box and a bank account in that name, and submitted fraudulent payment requests or completed fraudulent drafts resulting in seventy payments totaling approximately $129,404."); *United States v. Lublin*, 981 F.2d 367, 369 (8th Cir. 1992) (upholding more-than-minimal-planning enhancement where defendant "Lublin rented a post office box at the Austin, Minnesota, post office under the alias Allen Marx").[10]

---

[9]As an aside, this case was tried in the Southern District of Iowa, because the four victims alleged in the indictment were all residents of the district.

[10]*See also United States v. Alpert*, 28 F.3d 1104, 1118 (11th Cir. 1994) (upholding the imposition of more-than-minimal planning enhancement where defendant was charged with "acquiring post office boxes in fictitious names"); *United States v. Licciardi*, 30 F.3d 1127 (9th Cir. 1994) (upholding the imposition of more-than-minimal planning enhancement where defendant "arranged [ ] for the establishment of a post office box in the name of a fictitious company, intending to use the mails to keep his fraud secret."); *United States v. Dawson*, 238 F.3d 415 (4th Cir. 2000) (upholding the imposition of more-than-minimal planning enhancement where defendant "rented post office boxes where he could receive his ill-gotten gains, completing the forms necessary to obtain money from insurance policies held by

"The enhancement for sophisticated means [ ] requires conduct that is significantly more complex or intricate than the conduct that may form the basis for an enhancement for more than minimal planning. . . ." § 2F1.1, n.15.

Establishing a post office box in one's own neighborhood under an assumed name for the purpose of mailing fake letters and testimonials lacks the level of intricacy, deliberation, or complexity to distinguish Hance's crime from a garden-variety mail fraud offense or from the cases that courts have held qualified for the more-than-minimal planning enhancement. Therefore, we hold that the district court erred by imposing an enhancement for sophisticated means.

### 3. *Obstruction of Justice*

A court may enhance a sentence for obstruction of justice if the defendant has committed perjury or attempted to provide a materially false statement to a law enforcement officer that significantly impeded the official investigation of the instant offense. U.S.S.G. § 3C1.1. "We give great deference to a district court's decision to impose an obstruction of justice enhancement, but we will reverse the enhancement when the district court's findings are insufficient." *Craft,* 478 F.3d at 900.

At sentencing, a postal inspector testified that during the course of the investigation, Hance admitted to: (1) keeping only one-or-two dollars from each enrollment fee and sending the rest to Belize; (2) keeping records of enrollment and accounts in his head; and (3) personally knowing attorney Thompson. The investigator also testified that he relied upon Hance's statements by conducting a search for a Belizean Corporation and for purported attorney Thompson. But, Hance denied making these statements at trial and testified to a set of facts that directly conflicted with the statements that he allegedly made to the postal inspector. Based upon the

---

thirteen of his customers, forging their signatures on the paperwork and on the checks he received in their names.").

conflicting statements, the government sought an obstruction of justice enhancement. U.S.S.G. § 3C1.1.[11]

Hance, at sentencing and on appeal, denied making the admission to inspectors and argues that the inspector's memory is "faulty." If the district court believed Hance deliberately misled investigators to search for a Belizean accomplice, it was reasonable to find he had obstructed justice. The district court was forced to make a credibility assessment between the postal inspector and Hance, electing to believe the postal inspector. This credibility determination is "virtually never clearly erroneous." *United States v. Eis*, 322 F.3d 1023 (8th Cir. 2003). Accordingly, we affirm the enhancement for obstruction of justice.

### III. *Conclusion*

After a careful review of the record, we affirm each of the rulings of the district court except the imposition of a two-level enhancement for sophisticated means. Thus, we remand for re-sentencing consistent with this opinion.

———————————————

[11]It is not clear whether the government alleges that Hance misled investigators or perjured himself at trial. In fact, the government's sentencing memorandum states that, "[t]he inescapable conclusion is either that he committed perjury at trial, or he made materially false statements during his investigation. In either instance, the two-level enhancement provided in U.S.S.G. § 3C1.1 should be applied." While we strongly encourage district courts to identify which statements were false, we do not believe that the district court's failure to do so is grounds for an automatic reversal. *United States v. Thundershield*, 474 F.3d 503, 508 (8th Cir. 2007) ("Thundershield either lied during the investigation, or during trial, or both. There is absolutely no doubt that he lied.").