# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3636

_____

United States of America

*Plaintiff - Appellee*

v.

Brenda S. Laws

*Defendant - Appellant*

_____

No. 14-3639

_____

United States of America

*Plaintiff - Appellee*

v.

Lareka S. Laws

*Defendant - Appellant*

_____

No. 14-3640

_____

United States of America

*Plaintiff - Appellee*

v.

Milton L. Laws, Jr.

*Defendant - Appellant*

_____

No. 14-3642

_____

United States of America

*Plaintiff - Appellee*

v.

Jameel L. Laws

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: December 15, 2015
Filed: March 15, 2016

_____

Before MURPHY, BENTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Brenda Laws, Lareka Laws, Milton Laws, and Jameel Laws were charged with conspiracy to defraud the United States by falsely claiming tax refunds in violation of 18 U.S.C. § 286, and making false claims to the IRS in violation of 18 U.S.C. § 287. These charges arose from a scheme in which the defendants filed more than 200 tax returns claiming first-time homebuyer tax credits to which the named taxpayer was not entitled. The tax refunds, including the falsely-claimed credit, were then deposited into one of 17 bank accounts owned or controlled by a member of the Laws family. The total amount of the refunds fraudulently claimed was $1,730,086, and the total amount of the refunds issued was $1,364,171.

Following a jury trial, the four defendants were found guilty on all counts.[1] On November 6, 2014, the district court entered judgment and sentenced the defendants to terms of imprisonment ranging between 30 and 64 months. On appeal, Brenda Laws challenges the district court's calculation of the applicable Guidelines sentencing range; Milton Laws challenges the court's denial of his motion to suppress; Lareka Laws challenges the denial of her motion for acquittal; and Jameel Laws challenges the sufficiency of the evidence to support his conviction. We address each argument in turn.

I. Brenda Laws

In sentencing Brenda Laws, the district court overruled her objection to three sentencing enhancements, which collectively raised her total offense level from 22 to 32. Based on the total offense level of 32, the court sentenced Laws to 64 months on the conspiracy count and 30 months on the false claims count, to run concurrently.

---

[1]The indictment alleged one count of conspiracy against all four defendants (Count 1), and six separate counts of making false claims to the IRS (Counts 2–7). Brenda Laws was found guilty on Counts 1 and 7; Milton Laws was found guilty on Counts 1 and 7; Lareka Laws was found guilty on Counts 1, 2, and 5; and Jameel Laws was found guilty on Counts 1 and 4.

Laws appeals the application of the three enhancements, arguing that they were erroneously applied given the facts and circumstances of her offense. We review the district court's interpretation and application of the Sentencing Guidelines de novo, and review findings of fact for clear error. United States v. Ault, 598 F.3d 1039, 1040 (8th Cir. 2010).

The first sentencing enhancement Laws challenges is the 2-level sophisticated means enhancement under USSG § 2B1.1(b)(10)(C). That enhancement applies when the offense involved "especially complex or especially intricate . . . conduct." USSG § 2B1.1(b)(10)(C), Application Note 9(B) (2013). The relative sophistication of a scheme of fraudulent conduct is "viewed in light of the fraudulent conduct and differentiated, by assessing the intricacy or planning of the conduct, from similar offenses conducted by different defendants." United States v. Hance, 501 F.3d 900, 909 (8th Cir. 2007). Thus, for the enhancement to apply, the government must show that the offense conduct at issue was notably more complex or intricate than the garden-variety version of that offense. Id. The question is not whether the offense is generally considered a sophisticated one—for instance, securities fraud as compared to simple assault. Rather, the question is whether the particular offense conduct was more than usually sophisticated when compared to the offense in its basic form. Id. at 909–11 (holding that renting a post office box under an assumed name and using that box to carry out a fraud scheme was not distinguishable "from the multitude of other mail fraud cases").

Here, the district court concluded that the "repetitive and coordinated conduct" involved in the offense made its means sophisticated. Even if any single part of the offense was not particularly complicated, "repetitive and coordinated conduct can amount to a sophisticated scheme." United States v. Sethi, 702 F.3d 1076, 1079 (8th Cir. 2013) (quoting United States v. Fiorito, 640 F.3d 338, 351 (8th Cir. 2011)). Importantly, however, mere repetition is not sufficient to make an offense sophisticated. Instead, the sophistication of the offense conduct is associated with the

means of repetition, the coordination required to carry out the repeated conduct, and the number of repetitions or length of time over which the scheme took place. See, e.g., Fiorito, 640 F.3d at 351 (scheme required coordinating sale or refinancing of multiple homes, took place over the course of three years, and involved at least 11 victims); United States v. Bistrup, 449 F.3d 873, 883 (8th Cir. 2006) (scheme required repeatedly lying to victims, was maintained by using later-acquired funds to make partial payments to earlier victims, required the use of multiple financial accounts, and took place over almost five years); United States v. Finck, 407 F.3d 908, 915 (8th Cir. 2005) (scheme to obtain vehicles required obtaining multiple false confirmations that money had been transferred and coordinating sale of multiple vehicles in different states).

The government argued, in support of the enhancement, that the offense in this case involved opening and closing over 20 bank accounts for the purpose of receiving fraudulent refunds; filing tax returns without a preparer name listed; filing tax returns listing false addresses, "which made it difficult to verify information with the victims"; using P.O. boxes to receive tax refunds and correspondence; and filing over 200 fraudulent returns. See USSG § 2B1.1(b)(10)(C), Application Note 9(B); Hance, 501 F.3d at 910; Fiorito, 640 F.3d at 351; United States v. Huston, 744 F.3d 589, 592 (8th Cir. 2014). Tax fraud is generally a sophisticated offense, and any single one of the aggravating factors here may not be sufficient to elevate the offense conduct beyond the ordinary version of the offense. Moreover, we are not convinced that the mere repetitive conduct as it played out in this particular case rendered it sophisticated. But in combination, the multiple bank accounts, the use of multiple P.O. boxes, the filing of returns with no preparer listed, and the filing of returns listing false addresses demonstrates a carefully-considered attempt to conceal the nature of the scheme, to make identifying its multiple perpetrators more difficult, and to partially obscure the identity of the victims. See USSG § 2B1.1(b)(10)(C), Application Note 9(B). This, combined with the fact that at least six people were involved in executing the scheme and collectively managed to file more than 200

fraudulent returns claiming over $1.7 million in refunds, makes the offense conduct in this case "notably more intricate" than the garden-variety conspiracy to defraud the United States or false claim to the IRS. See Hance, 501 F.3d at 910. Accordingly, we conclude that the district court did not err in applying the sophisticated means sentencing enhancement to Brenda Laws.

The second sentencing enhancement Laws challenges is the 4-level organizer or leader enhancement under USSG § 3B1.1(a). The organizer/leader enhancement applies when the defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a) (2013). In determining whether to apply the enhancement, the court

> should consider . . . the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1(a), Application Note 4. Though all these factors are relevant, the primary requirement is that the defendant "directed or procured the aid of underlings" in committing the offense. United States v. Adejumo, 772 F.3d 513, 532 (8th Cir. 2014), cert. denied sub nom. Okeayainneh v. United States, 135 S. Ct. 1869 (2015) ("[W]e have always required evidence that the defendant directed or procured the aid of underlings.") (quoting United States v. Irlmeier, 750 F.3d 759, 764 (8th Cir. 2014)).

In this case, there is insufficient evidence to show that Brenda Laws was an organizer or leader. The only evidence in support of this conclusion is the fact that Laws owned the house where the IRS searched and seized relevant evidence and was the "owner and subscriber" for the internet access used to submit the fraudulent tax

returns. There was no evidence that Laws planned the fraudulent scheme, organized or directed her co-conspirators in carrying out the scheme, or otherwise controlled the commission of the offense. The facts that Laws' co-conspirators were her adult children and that the offense was apparently committed in her home may give rise to a general suspicion that she was likely in control of the family's conspiracy—but this gut feeling is insufficient to support a conclusion, by a preponderance of the evidence, that Laws was an organizer or leader of the offense for purposes of this enhancement. While the district court found that Laws "exercised decision-making authority over other participants," neither the court nor the government identified any specific evidence to support this conclusion. The evidence in the record is simply insufficient to support a finding that Laws was an organizer or leader, and application of this sentencing enhancement was erroneous.

Third and finally, Laws challenges the 4-level sentencing enhancement for an offense involving 50 or more victims, under USSG § 2B1.1(b)(2)(B) (2013). For purposes of the enhancement, a victim is defined as a person who "sustained any part of the actual loss," and actual loss means "the reasonably foreseeable pecuniary harm that resulted from the offense." USSG § 2B1.1(b)(2)(B), Application Notes 1, 3(A)(i) (2013). Taxpayers who have false tax returns filed in their name may be considered victims of tax fraud—rather than unindicted co-conspirators, as Laws urges[2]—because they will be held responsible for the fraud until they can prove their innocence and because the "adverse effect of battling the bureaucracy is a reasonably foreseeable pecuniary harm." United States v. Quevedo, 654 F.3d 819, 825 (8th Cir. 2011).

---

[2]Such taxpayers who benefited from the fraudulent scheme may of course be unindicted co-conspirators, rather than victims, but Laws has presented no evidence that this was the case here.

Here, the district court found that the government identified 245 people whose names were used to submit fraudulent tax returns. All of those 245 people were audited, many were required to spend time in interviews or filling out questionnaires to prove that they were not responsible for the fraud, and any who received money to which they were not entitled will lose future refund payments from the IRS. These facts are sufficient to support the finding that Laws' offense involved 50 or more victims, and the district court did not err in applying the corresponding sentencing enhancement.

A non-harmless procedural error in calculating the applicable Guidelines sentencing range "requires a remand for resentencing." United States v. Spikes, 543 F.3d 1021, 1023 (8th Cir. 2008) (citing United States v. Vickers, 528 F.3d 1116, 1120 (8th Cir. 2008)). Because the district court improperly imposed the organizer/leader sentencing enhancement, increasing Brenda Laws' total offense level by four levels, we reverse and remand for resentencing.

II. Milton Laws

On the fourth day of trial, Milton Laws moved to suppress statements he made to an IRS agent at his mother's home, while a search of the home was being executed. Specifically, Laws asserted that he was handcuffed, and therefore in custody, at the time he was interviewed by the IRS agent. After a hearing, which began that same day, the district court granted Laws' motion to suppress. Two days later, the government moved for reconsideration and, at a second hearing, presented the testimony of nine additional witnesses. After this hearing, the district court issued a thorough written decision discussing the evidence presented and applying the appropriate legal test to determine whether Laws was in custody at the time of his interview. The district court found that while Laws had been handcuffed when his pockets were searched, he was subsequently uncuffed and told that he was free to

leave before he was interviewed by the IRS agent.[3] The court concluded that Laws had not been in custody at the time he made the statements and, this time, denied his motion to suppress. Laws argues that the district court abused its discretion in granting the government's motion to reconsider, and clearly erred in finding that he was not in custody when he made the statements to the IRS agent.

We review the district court's decision to reconsider its ruling on the suppression issue for abuse of discretion. United States v. Hayden, 759 F.3d 842, 845 (8th Cir.), cert. denied, 135 S. Ct. 691 (2014). The standard that the district court is required to apply in making that decision, however, is not established in this circuit. See id. at 846. There are two basic standards in use in other circuits: while some require the government to justify its failure to present relevant evidence at the original suppression hearing, others have declined to impose a justification requirement and have instead prioritized the introduction of lawfully obtained evidence. Compare United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009); United States v. Kithcart, 218 F.3d 213, 219–20 (3d Cir. 2000); United States v. Dickerson, 166 F.3d 667, 678–79 (4th Cir. 1999), rev'd on other grounds, 530 U.S. 428 (2000); United States v. Villabona-Garnica, 63 F.3d 1051, 1055 (11th Cir. 1995); McRae v. United States, 420 F.2d 1283, 1286–88 (D.C. Cir. 1969) with United States v. Rabb, 752 F.2d 1320, 1323 (9th Cir. 1984), abrogated on other grounds by Bourjaily v. United States, 483 U.S. 171, 181 (1987). Under either standard, we conclude that the district court did not abuse its discretion in reopening the suppression issue.

---

[3]The district court's findings suggested that some of the confusion stemmed from a difference in policy between the IRS, whose agent testified that use of handcuffs was very uncommon during the execution of IRS search warrants, and the Pine Bluff Police Department, who assisted in the execution of the warrant and whose officer testified that use of handcuffs was their standard procedure in executing drug-related warrants. For some reason, many of the police officers who assisted in the execution of the warrant were officers from the Vice and Narcotics Unit.

Laws' initial motion to suppress was untimely, raised on the fourth day of trial. The initial suppression hearing began that same day, giving the government little or no time to prepare its response to Laws' allegations. The government filed its motion to reconsider only two days after the court's initial ruling, and cited specific evidence bearing directly on the question of custody that had not been presented to the court at the first hearing. A time period of two days to gather and interview nine witnesses, while trial was ongoing, is not excessive, and the government may not reasonably have been able to gather that evidence in the time between the filing of Laws' suppression motion and the court's ruling. Even under the more stringent standard, the government provided sufficient justification for its failure to present all relevant evidence at the first hearing on Laws' belated motion to suppress. Under these circumstances, the district court did not abuse its discretion in granting the government's motion to reconsider its prior ruling and reopen the suppression issue. Cf. United States v. Chavez Loya, 528 F.3d 546, 555 (8th Cir. 2008).

We now proceed to our substantive review of the court's denial of Laws' motion to suppress. We review the district court's factual findings for clear error, and its legal conclusions de novo. Chavez Loya, 528 F.3d at 552. Laws does not identify any clear error in the factual findings underlying the district court's ruling. In fact, the court resolved the bulk of the disputed factual issues in Laws' favor, finding—contrary to the testimony presented by the government—that he was in fact handcuffed at some point during the execution of the search warrant. Rather, Laws argues that the district court erred in concluding that, given the facts and circumstances of his interview with the IRS agent, a reasonable person would not have understood himself to be in custody.

"In determining whether a suspect is 'in custody' at a particular time we examine the extent of the physical or psychological restraints placed on the suspect during interrogation in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody." United States v. Griffin,

922 F.2d 1343, 1347 (8th Cir. 1990) (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)). Indicia of custody include:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

Id. at 1349. The district court found that Laws had been handcuffed before his interview, that he did not initiate the interview, that the atmosphere of the house was dominated by law enforcement, and that the occupants of the house were not free to move around without being accompanied by police. The district court also found that Laws was not arrested at the end of the interview, and that the interview lasted only ten minutes. Most importantly, the district court found that an IRS agent advised all occupants of the house, including Laws, that they were free to leave after Laws was uncuffed and before he made any statements to one of the agents.

Based on these factual findings, the district court did not err in finding that Laws was not in custody when he made the statements he seeks to suppress. Though here the second, third, and fifth Griffin factors weigh in favor of custody, an explicit advisory that an individual is free to leave generally "weigh[s] heavily toward a finding of non-custodial status." United States v. Elzahabi, 557 F.3d 879, 884 (8th Cir. 2009). Laws was handcuffed for a period of time before being told that he was free to leave. He was not personally advised of his right to leave, but rather was generally advised along with all other occupants of the house that they were free to go. These factors make this a closer case for custody than those situations where a

-11-

suspect is specifically, personally, and repeatedly advised of their right to end the encounter with law enforcement. See id.; United States v. Czichray, 378 F.3d 822, 826 (8th Cir. 2004). Nevertheless, we have held more than once that an "explicit assertion that the defendant may end the encounter . . . . generally removes any custodial trappings from the questioning." Elzahabi, 557 F.3d at 884 (quoting United States v. Ollie, 442 F.3d 1135, 1138 (8th Cir. 2006)). Here, the district court found that Laws was so advised. The court's finding was not clearly erroneous, and we accordingly conclude that Milton Laws was not in custody at the time of his interview with the IRS agent. The district court properly denied Laws' motion to suppress.

III. Lareka Laws

Lareka Laws challenges the district court's denial of her motion for a judgment of acquittal. She asserts that the government's evidence was insufficient to establish who in fact owned the real estate identified on the tax returns, or that the properties could not properly qualify for the homebuyer tax credit. She also argues that the government failed to prove that she had sufficient intent to defraud, or that any fraudulent claims she made were material. We review the denial of a motion for judgment of acquittal de novo. United States v. Ford, 726 F.3d 1028, 1033 (8th Cir. 2013), cert. denied, 135 S. Ct. 131 (2014) (citing United States v. Lewis, 557 F.3d 601, 612 (8th Cir. 2009)). When a motion for judgment of acquittal is based on insufficiency of the evidence, we view all evidence in the light most favorable to the verdict, accept all reasonable inferences in support of the verdict, and reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id.

We conclude that the evidence against Laws was sufficient to support the jury's guilty verdict. The evidence included more than 200 tax returns that improperly claimed a first-time homebuyer tax credit, a significant number of which Laws personally prepared; deposit of the credits into one of 17 accounts owned by a

-12-

member of the Laws family, including two accounts owned or co-owned by Lareka Laws; an admission by Laws that she had filed some of the relevant tax returns; testimony that Laws knew that the individuals she was filing returns for were not entitled to the homebuyer credit; and testimony that Laws had fabricated information on the tax returns she filed. Viewing this evidence in the light most favorable to the jury's verdict and accepting all reasonable inferences in favor of the verdict, we cannot say that no reasonable jury could have found Laws guilty beyond a reasonable doubt. Though the jury could alternatively have accepted the arguments Laws advances on appeal, it was not required to do so. See United States v. Hively, 437 F.3d 752, 761 (8th Cir. 2006). Because the evidence was sufficient to support a verdict of guilty, the district court did not err in denying Laws' motion for a judgment of acquittal.

IV. Jameel Laws

Like Lareka Laws, Jameel Laws challenges the sufficiency of the evidence to support his convictions for conspiracy to defraud the United States and for making false claims to the IRS. Jameel Laws asserts that there was insufficient evidence of an agreement to commit an illegal act, insufficient evidence of an unlawful objective on his part, and insufficient evidence of an act done in furtherance of the alleged conspiracy. We review the sufficiency of the evidence to support a conviction de novo, viewing the evidence in the light most favorable to the jury's verdict and accepting all reasonable inferences in support of the verdict. United States v. Armstrong, 782 F.3d 1028, 1035 (8th Cir. 2015).

The evidence against Laws included a tax return filed in his name and prepared by his sister Lareka Laws claiming a first-time homebuyer credit; the deposit of the associated tax refund into an account owned by Jameel Laws; testimony that Jameel Laws had never purchased a home and did not qualify for the tax credit; evidence that tax refunds of other individuals who received credits to which they were not entitled

-13-

were deposited into bank accounts controlled by Jameel Laws; and evidence that Jameel Laws had withdrawn the money deposited into these accounts. Viewing this evidence in the light most favorable to the jury's verdict and accepting all reasonable inferences in support of the verdict, we cannot conclude that no reasonable jury could have found Laws guilty beyond a reasonable doubt. Armstrong, 782 F.3d at 1035. Based on the evidence presented, a reasonable jury could have found that Laws knowingly presented a tax return falsely claiming a tax credit to which he was not entitled, and that Laws conspired to defraud the United States by obtaining this fraudulent credit. Accordingly, we conclude that the evidence was sufficient to support Laws' conviction.

V. Conclusion

For the foregoing reasons, we reverse the district court's application of the organizer/leader sentencing enhancement as to Brenda Laws and remand her case for resentencing. We affirm the judgment of the district court in all other respects.

_____